UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| C.G.,[1] | Case No. 25-cv-07397-TSH |
| Plaintiff, | |
| v. | **ORDER RE:  CROSS-MOTIONS FOR SUMMARY JUDGMENT** |
| SSA COMMISSIONER, | Re: Dkt. Nos. 19, 25 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff C.G. moves for summary judgment to reverse the Social Security Administration's denial of his claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 19 ("Pl.'s Mot.").  The Commissioner cross-moves to remand.  ECF No. 25 ("Def.'s Mot.").  Plaintiff filed a reply.  ECF No. 27 ("Pl.'s Reply").  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.[2]

## II.    PROCEDURAL HISTORY

On June 1, 2022, Plaintiff filed an application for Social Security Disability Insurance (SSDI) benefits, stating a disability onset date of June 15, 2019.[3]  Administrative Record (AR) 242–43.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 9, 10.

[3] Plaintiff filed a protective application on May 12, 2022.  AR 17.

United States District Court
Northern District of California

before an Administrative Law Judge (ALJ).  AR 87–157.  An ALJ held two hearings, one on March 7, 2024, and one on June 26, 2024.  AR 14–86.  The ALJ issued an unfavorable decision on July 30, 2024.  AR 14–39.  The Appeals Council denied Plaintiff's request for review on July 9, 2025.  AR 1–6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.    ISSUES FOR REVIEW

Plaintiff raises three issues on appeal:  (1) whether the ALJ erred in failing to consider Plaintiff's Chronic Pain Syndrome to be a medically determinable impairment; (2) whether the ALJ provided specific, clear and convincing reasons for rejecting Plaintiff's testimony and allegations; and (3) whether the ALJ properly evaluated the medical opinions of Drs. Fadaki, Wilson, Zwerin, and Purcell.  Pl.'s Mot. at 2:5, 7:25, 18:6.  Plaintiff requests the Court remand for the immediate calculation and award of benefits.  *Id.* at 24:25–25:22.  The Commissioner requests the Court remand for further administrative proceedings.  Def.'s Mot. at 1.

In sum, the Court concludes that the ALJ erred in determining Plaintiff's medical impairments and in evaluating Plaintiff's testimony and the medical opinions.  Because these errors necessarily impacted the remainder of the ALJ's decision, reversal is warranted.

### IV.    STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  Substantial means "more than a mere scintilla," but only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up).  Under this standard, which is "not high," the Court looks to the existing administrative record and asks, "whether it contains 'sufficient evidence' to support the agency's factual determinations."  *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm

simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3)(A) – (B)). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis. *See* 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* at § 416.920(a)(4) (same standard for supplemental security income). The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," defined as "work done for pay or profit that involves significant mental or

physical activities." *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)) (cleaned up).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since June 15, 2019, the alleged onset date.  AR 20.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," meaning "that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments:  "degenerative disc disease of the lumbar, cervical, and thoracic spine; left shoulder tear and arthritis; right hip arthritis; diabetes mellitus; obesity; major depressive disorder; bipolar disorder; generalized anxiety disorder; and intermittent explosive disorder (20 CFR 404.1520(c))."  AR 20.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* at Pt. 404 Subpt. P, App. 1.  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  *Id.* at § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* at § 404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings.  AR 20.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do

United States District Court
Northern District of California

despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i). If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled. *Id.* at § 404.1520(f). Here, the ALJ determined Plaintiff is unable to perform any past relevant work. AR 30. The ALJ determined Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) except the individual can frequently handle or finger on the left hand and reach in all directions with the left upper extremity. He can occasionally stoop, kneel, crouch, crawl and climb ramps or stairs should not climb ladders, ropes or scaffolds. He must avoid concentrated exposure to excessive vibration and workplace hazards such as unprotected heights. He can understand, remember, and carry out simple routine tasks that do not involve a specific production rate pace, such as assembly line work or an hourly production quota. He can have occasional contact with coworkers or supervisors. He cannot have any contact with the public.

AR 22. The ALJ determined

> [t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

AR 31.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the testimony of a vocational expert. *Ford*, 950 F.3d at 1149 (citation omitted).

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114–15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)). They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability. *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

"[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2).  An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[5]  *Id.*  Here, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including marker (DOT 209.587-034), routing clerk (DOT 222.687-022), and photocopying-machine operator (DOT 207.685-014).  AR 31–32.  As such, the ALJ determined Plaintiff was not disabled.  AR 32.

**B.    Medically Determinable Impairments**

Plaintiff argues that the ALJ erred in his step two findings because the ALJ did not include Plaintif's Chronic Pain Syndrome as a medically determinable impairment, and the ALJ did not discuss any of the evidence that establishes this impairment.  Pl.'s Mot. at 2:4–7:23.  Plaintiff further argues that this error infected the ALJ's step three and step five analysis.  *Id.* at 7:14–23.

**1.    Legal Standard**

At step two of a Social Security disability inquiry, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(ii)).  "[A]n impairment or combination of impairments may be found not medically severe *only if* the evidence establishes a slight abnormality that has no more than minimal effect on an individual's ability to work." *Id.* (emphasis in original) (cleaned up).  This evaluation at step two is a *de minimis* test intended to "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  Under this standard, an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments *only if* his

---

[5] The DOT classifies jobs by their exertional and skill requirements.  *See* 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

United States District Court
Northern District of California

conclusion is "clearly established by medical evidence." *Webb,* 433 F.3d at 687 (quoting *Titles II & XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985)).  The burden of proving that an impairment is severe rests with the claimant.  *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) (noting the claimant bears the burden of showing "at step two that he has a medically severe impairment or combination of impairments").

For mental impairments, "the reviewer must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. §§ 404.1520a(b), (c)(1) – (2)) (cleaned up).  The four functional areas that must be rated are:  (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).

### 2.    Analysis

In determining whether an impairment is severe, an ALJ must engage in "a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]"[6]  SSR 85-28.  A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.

Here, Plaintiff's Disability Report lists "Other Chronic Pain" as one of Plaintiff's medical conditions that limit his ability to work.  AR 349, 476.  Plaintiff's medical records indicate that Plaintiff has been diagnosed with and treated for Chronic Pain Syndrome.  *E.g.,* AR 504, 954, 989,

---

[6] Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) adapting to changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1522(b), 416.922.

United States District Court
Northern District of California

1079, 1084, 1137–38, 1184, 1371–72, 1595.  The ALJ found that, in addition to several severe impairments, Plaintiff "has non-severe impairments of tremors and seizures."  AR 20.  In his analysis of Plaintiff's medically determinable impairments, the ALJ does not mention or discuss Plaintiff's Chronic Pain Syndrome.  *Id.*

Plaintiff argues that because the Commissioner fails to address Plaintiff's argument that the ALJ erred in not considering his Chronic Pain Syndrome to be a medically determinable impairment, the Commissioner has waived the argument.  Pl.'s Reply at 1:5–2:10.  The Court agrees.

The Commissioner waives—and thus concedes—an argument by failing to respond to a plaintiff's argument put forth in the plaintiff's motion.  *See Stanley v. O'Malley,* No. 24-cv-08776-RS, 2025 WL 2263832, at *4 (N.D. Cal. Aug. 7, 2025) ( "In failing to respond to the merits of Plaintiff's claims, the Commissioner has waived those issues."); *Lloyd B. v. O'Malley*, No. 23-cv-05010-DMR, 2024 WL 4557333, at *4 (N.D. Cal. Oct. 22, 2024) ("The Commissioner does not respond to this argument in his motion and thus concedes it."); *Arik v. Astrue*, No. C-08-5564-SBA, 2010 WL 2557493, at *3 (N.D. Cal. June 21, 2010) ("[T]he Commissioner waived this argument by failing to raise it in his opposition to Plaintiff's motion for summary judgment."); *Jenna R. v. Comm'r Soc. Sec. Admin.*, No. 6:24-cv-01221-AR, 2025 WL 1144751, at *3 (D. Or. Apr. 18, 2025) ("As this court previously has concluded, the Commissioner's failure to respond to a claimant's arguments constitutes a waiver.").  Upon the Commissioner's waiver, a court should conclude that the ALJ erred in areas identified by a plaintiff for which the Commissioner fails to respond.  *Krista B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-01822-HL, 2021 WL 5235969, at *4 (D. Or. Nov. 10, 2021).  This waiver rule is grounded in fairness—a claimant should not be forced to relitigate issues that the Commissioner declines to independently review and assess.  *Id.*; *see also Jenna R.*, 2025 WL 1144751, at *4 ("By refusing to undertake an analysis of plaintiff's arguments, and agreeing only to remand for additional proceedings, the Commissioner seeks a mulligan or 'do over.'").

The Commissioner fails to respond to Plaintiff's argument that the ALJ's step two analysis is devoid of any reference to Plaintiff's Chronic Pain Syndrome or medical evidence relevant to

United States District Court
Northern District of California

this condition. *See generally* Def.'s Mot. Therefore, the Court finds that the Commissioner waived this argument. *See Dwight F. v. O'Malley*, No. 22-cv-07218-DMR, 2024 WL 3580823, at *3 (N.D. Cal. July 29, 2024) ("With respect to Plaintiff's argument that the ALJ erred in finding his mental impairments non-severe, the court finds that the Commissioner failed to respond to the argument and thus concedes it."). As such, the Court finds that the ALJ erred at step two in omitting Plaintiff's medically determinable impairment of Chronic Pain Syndrome. *See Smolen*, 80 F.3d at 1282 ("Without explanation, [the ALJ] ignored medical evidence of Smolen's other impairments and thereby erred."). This error was not harmless because although the ALJ states that he considered all of Plaintiff's impairments in assessing Plaintiff's RFC, the ALJ did not consider Plaintiff's Chronic Pain Syndrome. *See* AR 20 ("Nevertheless, I considered  all of [Plaintiff's] medically determinable impairments, including those that are not severe, when assessing [Plaintiff's] residual functioning capacity."); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) ("[A]n RFC that fails to take into account a claimant's limitations is defective."); *cf. Lonnell T. v. Kijakazi*, No. 4:20-cv-08105-KAW, 2022 WL 17971642, at *3 (N.D. Cal. Sept. 29, 2022) (holding RFC not supported by substantial evidence where ALJ "did not account for all of Plaintiff's functional limitations").

## C.     Subjective Complaints

Plaintiff argues that the ALJ failed to provide specific, clear and convincing reasons for rejecting Plaintiff's testimony and allegations as unpersuasive and failed to identify specific evidence which discredits any of Plaintiff's descriptions of his activities and limitations. Pl.'s Mot. at 7:25–18:5. Plaintiff further argues that the ALJ erred by (1) rejecting Plaintiff's testimony of pain because the degree of pain alleged was not supported by objective medical evidence; (2) relying on a mistaken perception that there are gaps in Plaintiff's medical treatment; and (3) misinterpreting Plaintiff's medical evidence of an "intention tremor." *Id.*

### 1.     Legal Standard

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented

9

objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

### 2.    Analysis

At the hearing in March 2024, Plaintiff testified that he experiences spasms that start in his face and work down his left arm to his leg which last between twenty minutes to an hour and twenty minutes; the spasms are very painful and limit what he can do; he has an IHSS worker that helps him with his everyday duties; he must use a scooter to go shopping; he experiences constant pain in his left shoulder, lower back, and hips; because of his pain and medication for pain, he must sleep every day from 12:30–4:00 p.m.; he experiences numbness in his left arm that is irritated by repetitive motion; he must take a break for thirty to forty minutes after using his left hand for grasping or holding onto things; he can only sit for twenty to thirty minutes at a time before getting up because his back and hip begin hurting; and he has two to three days a week where he cannot get out of bed due to depression and pain. AR 72–79. At the hearing in June 2024, Plaintiff testified that his pain medications make him dizzy, sleepy, and lightheaded; and his

IHSS worker comes to his house five days a week, three hours a day.  AR 45–50.

The ALJ summarized Plaintiff's testimony as follows:

> [Plaintiff] testified that he is unable to work because of severe back, shoulder and hip pain (Hearing Testimony).  He testified to radiating numbness down his legs and that the pain has allegedly limited his ability to stand or sit to a few minutes at a time and has to elevate his legs for symptom relief.

AR 23.  The ALJ rejected Plaintiff's testimony because

> [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.  As for [Plaintiff's] statements about the intensity, persistence, and limiting effects of his or her symptoms, they are inconsistent because the medical evidence of record indicates that the severity of the claimant's impairments is not to the degree alleged.

AR 24.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but did not make any findings that Plaintiff was malingering.  *See* AR 23–27.  Thus, to find Plaintiff's testimony not credible, the ALJ was required to "mak[e] specific findings as to credibility and stat[e] clear and convincing reasons for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Here, the Commissioner concedes that "the Commissioner's final decision is not supported by substantial evidence or is undermined by harmful legal error," in part because the ALJ must "[f]urther evaluate [Plaintiff's] alleged symptoms and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms." Def.'s Mot. at 1:20–2:12.  Plaintiff argues that due to the Commissioner's concession, the Court should accept Plaintiff's argument that the ALJ improperly rejected Plaintiff's testimony as true. Pl.'s Reply at 2:19–5:14.  The Court agrees.  Moreover, the Commissioner does not respond to Plaintiff's argument that the ALJ committed legal error in rejecting Plaintiff's pain testimony on the ground that the medical evidence does not support the degree of pain alleged.  *See* Def.'s Mot. at 3:6–17; Pl.'s Reply at 2:19–3:9.  Therefore, the Court finds that the Commissioner waived this argument. *See, e.g., Lloyd B.*, 2024 WL 4557333, at *4 ("The Commissioner does not respond to this argument in his

motion and thus concedes it."). Nor does the Commissioner meaningfully respond to Plaintiff's other arguments. *See* Def.'s Mot. at 3:7–10 ("The ALJ then explained that Plaintiff's physical and mental impairments were not as limiting as he alleged, due to the contradictory objective medical evidence, evidence that Plaintiff's symptoms improved and were under good control with medication and other treatment, and gaps in treatment."). So the Commissioner has also waived these arguments. As such, the Court finds that the ALJ erred in rejecting Plaintiff's testimony, including his pain testimony, because the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony. *See Smith*, 14 F.4th at 1113 (requiring the ALJ to provide clear and convincing reasons for "reject[ing] the specific portions of the claimant's testimony that the ALJ has found not to be credible"); *Lambert,* 980 F.3d at 1277 (holding ALJ erred where she "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (emphasis in original); *Smolen*, 80 F.3d at 1282 (explaining ALJ may not reject subjective symptom testimony "simply because there is no showing that the impairment can reasonably produce the *degree* of symptom alleged") (emphasis in original).

Accordingly, it is undisputed that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. As discussed further below, this error was not harmless because it impacted the ALJ's determination that Plaintiff could perform jobs in the national economy. *Cf. S.W. v. O'Malley*, No. 24-cv-00248-SVK, 2024 WL 3580825, at *4 (N.D. Cal. July 30, 2024) (holding ALJ's error in omitting "Plaintiff's report of reaching limitations" from the RFC determination was not harmless).

**D.    Medical Opinions**

Plaintiff argues that the ALJ improperly rejected the medical opinions of Drs. Fadaki, Wilson, Zwerin, and Purcell because the ALJ failed to properly comply with 20 C.F.R. § 404.1520c when evaluating those opinions. Pl.'s Mot. at 18:6–24:22. Specifically, the ALJ erred by (1) failing to explain how he considered the consistency factor in evaluating Dr. Fadaki's opinion; (2) failing to explain how he considered the consistency and supportability factors in evaluating Dr. Wilson's opinion; and (3) failing to even address the opinions of Drs. Zwerin and

Purcell. *Id.*

####    1.    Legal Standard

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods*, 32 F.4th at 791–93 (embracing the Commissioner's new regulatory framework for evaluating medical opinions). Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(1) – (5), 416.920c(c)(1) – (5). Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors. *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791–92 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The new regulations replace the former hierarchy of medical opinions and no longer require the ALJ to give greater weight to the medical opinions of treating physicians. *Woods*, 32 F.4th at 787; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific

United States District Court
Northern District of California

13

evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Now, the ALJ is free to consider the medical opinions equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. *Woods*, 32 F.4th at 787. Substantial evidence will be found when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2. Analysis

Niloofar Fadaki, M.D., performed an internal medicine assessment of Plaintiff on September 25, 2022, and submitted a medical opinion in conjunction with this assessment. AR 1714–19. Jennifer Wilson, M.D., submitted a Medical Source Statement Concerning the Nature and Severity of an Individual's Physical Impairment for Plaintiff on January 19, 2024. AR 2885–90. Marvin B. Zwerin, D.O., performed an Agreed Medical Examination of Plaintiff on April 13, 2021, and submitted a medical opinion in conjunction with this examination. AR 679–92. Don Purcell, M.D., conducted a psychiatric Qualified Medical Evaluation of Plaintiff on September 24, 2021, and submitted a medical opinion in conjunction with this evaluation. AR 1748–75.

Dr. Zwerin found that Plaintiff could not work at or above shoulder level with his left upper extremity, could not have prolonged use of his left upper extremity, and could not do overhead work. AR 691. Dr. Fadaki found that Plaintiff is limited to lifting only with the right upper extremity (not the left upper extremity) and has severe limitations on gross and fine manipulation with his left upper extremity or lifting heavier objects that requires use of both upper extremities. AR 1719.[7]

Here, the Commissioner concedes that "the Commissioner's final decision is not supported

---

[7] The Court discusses only those medical opinions that are relevant to resolving this case.

by substantial evidence or is undermined by harmful legal error," in part because the ALJ must "[g]ive further consideration to the medical source opinions pursuant to the provisions of 20 C.F.R. § 404.1520c." Def.'s Mot. at 1:20–2:12. Plaintiff argues that due to the Commissioner's concession, the Court should accept Plaintiff's argument that the ALJ erred in evaluating the medical opinions as true. Pl.'s Reply at 2:19–5:27. The Court agrees. Moreover, the Commissioner does not respond to Plaintiff's argument that the ALJ failed to consider the medical opinions of Drs. Zwerin and Purcell. *See* Def.'s Mot. at 3:18–27; Pl.'s Reply at 5:15–27. Therefore, the Court finds that the Commissioner waived this argument. *See, e.g., Lloyd B.*, 2024 WL 4557333, at *4 ("The Commissioner does not respond to this argument in his motion and thus concedes it."). Nor does the Commissioner meaningfully respond to Plaintiff's arguments regarding Drs. Fadaki and Wilson. *See* Def.'s Mot. at 3:18–20 ("The ALJ pointed to evidence contradicting the opinions of Jennifer Wilson, M.D., Niloofar Fadaki, M.D., and various workers compensation providers."). So the Commissioner has also waived these arguments.

Accordingly, it is undisputed that the ALJ erred in rejecting the medical opinions of Drs. Fadaki, Wilson, Zwerin, and Purcell. As discussed further below, this error was not harmless because it impacted the ALJ's determination that Plaintiff could perform jobs in the national economy. *Cf. S.W.*, 2024 WL 3580825, at *6 (holding ALJ's error in evaluating medical opinion was not harmless).

**E.    Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits. *See G.P. v. Dudek*, No. 24-cv-00088-VKD, 2025 WL 945813, at *4 (N.D. Cal. Mar. 28, 2025) ("If the Court determines that there has been reversible legal error, the Court must then decide whether to remand for further proceedings or for an automatic award of benefits."). The Social Security Act permits courts to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019 ("Accordingly, every Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award

United States District Court
Northern District of California

15

benefits."). "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

"In determining whether to remand for benefits, the Ninth Circuit has devised a 'three-part credit-as-true standard.'" *Dwight F.*, 2024 WL 3580823, at *2 (citing *Garrison*, 759 F.3d at 1020). Courts use the credit-as-true rule to take subjective symptom testimony or medical opinion evidence "to be established as true." *Garrison*, 759 F.3d at 1019–20. Under the following tripart credit-as-true standard, each part must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and
>
> (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020; *see Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("We conclude that each of the credit-as-true factors is satisfied and thus that remand for the calculation and award of benefits is warranted.").

However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther*, 891 F.3d at 877 (cleaned up). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, Plaintiff requests that the Court remand with instructions to award benefits pursuant to 42 U.S.C. § 405(g). Pl.'s Mot. at 24:25–25:22; Pl.'s Reply at 6:1–15:23. Plaintiff argues that Plaintiff's testimony and the medical opinions—improperly rejected by the ALJ—establish that he is disabled. Pl.'s Mot. at 25:5–23. The Commissioner contends that the appropriate remedy is to

United States District Court
Northern District of California

remand for further administrative proceedings because "further evaluation of the medical opinion evidence and Plaintiff's symptom testimony is necessary." Def.'s Mot. at 1:4–16. The Commissioner further contends that "the record does not conclusively establish that Plaintiff is disabled." *Id.*

The Court finds that remand for the calculation and award of benefits is warranted. *Cf. Jalissa P.*, 2025 WL 2682578, at *13–14 (remanding for an immediate award of benefits after crediting as true plaintiff's testimony and medical opinions). First, the record is extensive. It contains hundreds of pages of medical records dating back over seven years and includes treatment notes documenting over fifty doctors' visits addressing Plaintiff's various medical and mental health conditions immediately before or within the relevant time period. *See* AR 694–3082; Pl.'s Statement of Facts at 11–49 (ECF No. 20); Pl.'s Reply at 6:1–7:21; *cf. Trevizo*, 871 F.3d at 683. The record also reflects Plaintiff's testimony before the ALJ, his responses to numerous questionnaires about his physical and mental limitations, and the medical opinions of examining clinicians, all of which corroborate his impairments. *See* AR 45–50, 72–79, 363–74, 479–86, 679–92, 1078–79, 1370–71, 1714–19; *cf. Trevizo*, 871 F.3d at 683. Moreover, the Vocational Expert (VE) specifically opined regarding the inability of an individual with Plaintiff's mental and physical limitations as described by Plaintiff's testimony and by Drs. Zwerin and Fadaki to sustain work. *See* AR 56–60; *cf. Trevizo*, 871 F.3d at 683.

Second, as discussed, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony and the medical opinions of Dr. Zwerin and Dr. Fadaki. Thus, the Court credits the evidence as true for this analysis. *Cf. Benecke*, 379 F.3d at 594 ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

Finally, "[c]rediting the discredited testimony as true, there is no doubt as to plaintiff's disability." *Jalissa P.*, 2025 WL 2682578, at *14. "The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true." *Tennille S. v. Kijakazi*, No. 21-cv-09779-SI, 2023 WL 122396, at *13 (N.D. Cal. Jan. 6, 2023).

United States District Court
Northern District of California

17

United States District Court
Northern District of California

Such is the case here. If credited as true, Plaintiff's testimony establishes that he is disabled because the VE testified that someone with Plaintiff's limitations would be unable to find full-time work. *See* AR 72–79 (Plaintiff testifying that because of his pain and medication for pain, he must sleep every day from 12:30–4:00 p.m.; he must take a break for thirty to forty minutes after using his left hand for grasping or holding onto things; he can only sit for twenty to thirty minutes at a time before getting up because his back and hip begin hurting; and he has two to three days a week where he cannot get out of bed due to depression and pain), 56 (VE testifying that limitations "due to the combination of [a claimant's] impairment and being in significant pain" of lying down "for 30 minutes at a time, at least three times a day," the ability "to concentrate or persist on tasks about 40 minutes every hour," and likely missing "more than four days of work a month" "would eliminate competitive employment"); *cf. Stanley*, 2025 WL 2263832, at *7 ("Had this evidence been correctly weighed, the ALJ would have had to conclude, in keeping with the vocational expert's testimony, that there are not significant numbers of jobs in the national economy that Plaintiff can perform."). The same is true for the opinions of Dr. Zwerin and Dr. Fadaki. *See* AR 691 (Dr. Zwerin finding that Plaintiff could not work at or above shoulder level with his left upper extremity, could not have prolonged use of his left upper extremity, and could not do overhead work), 1719 (Dr. Fadaki finding that Plaintiff is limited to lifting only with the right upper extremity (not the left upper extremity) and has severe limitations on gross and fine manipulation with his left upper extremity or lifting heavier objects that requires use of both upper extremities), 57–58 (VE testifying that the additional limitation of "occasional use of the left upper extremity for finger, handle, feel" would eliminate jobs at the sedentary and light level because those jobs "would require frequent use of both hands to reach, handle, finger, and feel").

Moreover, there is no "serious doubt" based on "an evaluation of the record as a whole" that Plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1021; *see* Pl.'s Reply at 9:22–24 (noting that the Commissioner does not contest this issue). Plaintiff experiences chronic pain that substantially limits his abilities, has severe physical and mental conditions as a result of this chronic pain, and physical limitations that include severe limitations in using his left upper extremity. *See* AR 72–79, 349, 504, 691, 1719; Pl.'s Reply at 6:28–7:21 (noting the

18

United States District Court
Northern District of California

Commissioner does not dispute Plaintiff's Statement of Facts); *cf. Trevizo*, 871 F.3d at 683. Therefore, the requirements of the *Garrison* test are met.

The Commissioner asserts that "[t]o reach an accurate disability determination, the Agency, as factfinder, must resolve factual conflicts and evaluate the most Plaintiff can do despite his impairments." Def.'s Mot. at 1:12–14. Not so. As discussed, because the VE testified to the inability of a claimant with Plaintiff's specific limitations to sustain work, there is no need for additional fact-finding regarding Plaintiff's limitations. And by refusing to undertake an analysis of Plaintiff's arguments, and agreeing only to remand for additional proceedings, the Commissioner seeks a mulligan or do over—the Court will not sanction such an approach. *Cf. Jenna R.*, 2025 WL 1144751, at *4.

Accordingly, because Plaintiff satisfies the three-part credit-as-true analysis, and the Court has no doubt that Plaintiff is disabled, the Court reverses the ALJ's decision and remands this case for an immediate award of benefits.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision. This matter is **REMANDED** for an award of disability benefits. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 3, 2026

_____
THOMAS S. HIXSON
United States Magistrate Judge